IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | : No. 4:23-CR-159 |
| KATRINA MACLEAN, | : |
| | : |
| Defendant. | :(Chief Judge Brann) |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS INDICTMENT**

Defendant Katrina Maclean, by and through her undersigned counsel, hereby submits this Reply Brief in further support of her Motion to Dismiss the Indictment.

**PRELIMINARY STATEMENT**

In this unprecedented federal prosecution, brought under an insupportable legal theory, the Government has failed to cite to a single federal criminal case in this country where not only human remains were deemed to constitute property, but where a similar federal criminal prosecution was brought by the Government under the National Stolen Property Act.[1] Indeed, the Government does not, and cannot, dispute this important fact. Instead, to fill the glaring gaps of any federal precedent, and in defense of its odd choice of filing federal charges and manufacturing a federal crime, the Government embarks upon a campaign of irrelevancy and

---

[1] This absence of federal precedent is meaningful for the plain reason that the purported conduct in this case, as charged, was not a federal crime.

mischaracterizations.  Its arguments are baseless.  The Indictment should be dismissed.

## ARGUMENT

### I.

**THE GOVERNMENT HAS NOT REFUTED THAT HUMAN REMAINS ARE NOT "GOODS" WITHIN THE NATIONAL STOLEN PROPERTY ACT**

At the outset, the Government's opposition demonstrates a fundamental and troubling misunderstanding of Ms. Maclean's argument, casting it in extreme terms, to concoct the argument that her position is even "absurd."  ECF No. 117 at 3.[2]  In reality, it was not, and has never been, Ms. Maclean's argument.  To the contrary, Ms. Maclean's argument could not be more clear: human remains do not constitute property under the statute the Government chose to initiate this novel federal prosecution, the National Stolen Property Act, 18 U.S.C. § 2314.  See ECF No. 112 at 5-6.

Second, while the Government argues that "[n]one of the defendants have identified any cases holding that Section 2314 does not apply where human remains were stolen and transported across state lines," glaringly, the Government does not identify a single case where Section 2314 *was* applied to human remains.  This is particularly notable given the Government's burden of proof as

---

[2]  The Government's brief lacks any page numbers.  Citation to the Government's brief reflect the filed PACER page numbers.

the progenitor of the charges and to present legal support for them.  See ECF No. 117 at 5.

Third, the Government's reliance that human remains may constitute at least "quasi" property for the purposes of § 2314 is unavailing.  In those instances that courts found quasi property rights, it was for a limited purpose in the context of providing family members standing for a right of recovery to sue others for the deprivation of that property, primarily in Section 1983 actions.  See Shelley v. County of San Joaquin, 996 F. Supp. 2d 921, 929 (E.D. Cal. 2014) (collecting cases and finding that a decedent's remains are not property, but are at most quasi property of the next of kin to facilitate a recovery for the negligent mishandling of a dead body and noting that the court was "unaware of *any court* holding" that human remains "are the property of next of kin in the ordinary sense.") (emphasis in original).

Finally, the Government goes to extraordinary lengths to creatively, yet erroneously, rely on a selective reading of the case law it cites.  Those efforts should be utterly rejected.

To start, the Government touts the Third Circuit's holding in United States v. Seagraves, 265 F.2d 876, 880 (3d Cir. 1959) as authority that "any items which are the 'subjects of commerce' even commerce of a 'specialized nature,' are goods or wares under Section 2314."  ECF No. 117 at 5.  However, the Government self-

servingly takes the Seagraves quote out of context and conveniently omits any reference that such goods, wares or merchandise must constitute "personal property or chattels." Seagraves, 265 F.2d at 880.

Similarly, with respect to the Government's citation to the cases involving "quasi-property" rights, the Government presents case law that does not stand for the proposition it claims.

The Government states that "Massachusetts law has long recognized a quasi-right of property in the mortal remains of the dead . . .," relying on Burney v. Children's Hospital in Boston, 169 Mass. 57, 60 (MA 1897) and a purported quote from that case. However, the Government is egregiously wrong. The parenthetical quote, purportedly derived from a Massachusetts case, is actually from a Rhode Island case, Pierce v. Cemetery, 10 R.I. 227 (RI 1872). In Burney, the court cited Pierce, noting the contrast *that in Rhode Island*, there is a quasi right of property in a dead body. Burney, 169 Mass. at 59 (emphasis added).

Next, the Government's reliance on the Pennsylvania Supreme Court's holding in Pettigrew v. Pettigrew, 207 Pa. 313 (Pa. 1904), has equally-little merit. In that case, the issue was not whether human remains constitute property, but rather who has the right to possess the remains of a deceased. And perhaps more notably, the Government studiously ignores any reference to the Pennsylvania case cited in Ms. Maclean's opening brief, Wynkoop v. Wynkoop, 42

4

Pa. 293, 298 (Pa. 1861), that specifically held that human remains are not property. ECF No. 112 at 7.

Yet, there is more.

The Government relies on two related Pennsylvania criminal cases involving brothers who were funeral home directors, even going so far as billing those as "case[s] involving facts similar to the one at bar."[3] ECF No. 117 at 9. Nothing could be further from truth. While those cases did involve unscrupulous funeral directors who sold human tissue from cadavers, those appeals had nothing to do with the underlying convictions, as both defendants entered guilty pleas, and the issues on appeal were limited to restitution and sentencing challenges. Significantly, those cases had nothing to do with the legal question presented here, namely, whether human remains constitute property.

Furthermore, the Government cites as "persuasive authority" an unpublished suppression opinion from the Eastern District of Michigan, United States v. Rathburn, No. 16-20043, 2016 WL 5928802, *5-6 (E.D. Mich. Oct. 11, 2016). ECF No. 117 at 11. However, that case is completely inapposite. In Rathburn, unlike this case, the defendant was never charged with violating 18

---

[3] Those cases were companion cases, Commonwealth v. Garzone, 34 A.3d 67 (Pa. 2012) and Commonwealth v. Mastromarino, 2 A.3d 581 (Pa. Super. Ct. 2010).

5

U.S.C. 2314.[4] Understandably, the Government fails to reveal that critical fact.[5]

In its final act of desperation, the Government even advances arguments based upon the Warsaw Convention, an obscure treaty that the United States joined in 1934, that regulates claims against transportation of goods, persons and baggage by air carriers. While human remains shipped by air carriers may have qualified as "goods" under the Warsaw Convention, such definition has never been applied to the federal criminal prosecution of a defendant under § 2314.

## II.

### THE $5,000 JURISDICTIONAL AMOUNT HAS NOT BEEN SATISFIED

It bears highlighting that unable to reconcile the case law cited by Ms. Maclean that human remains do not have any compensable value, the Government has merely ignored it. See ECF No. 112 at 10 (citing Shults v. United States, 995 F. Supp. 1270 (D. Kan. 1998). Other than relying on the figures what the remains were sold for, the Government cites to no authority that human remains have any compensable value.

---

[4] The Rathburn defendants were charged with Wire Fraud, Transportation of Hazardous Material, and False Statements.

[5] Despite the Government's false contention that the facts in Rathburn are "very close to the facts alleged here," the prosecution's failure to charge the Rathburn defendants with violating § 2314 is illuminating. ECF No. 117 at 12.

Instead, the Government spends the lion's share of its argument protesting that its aggregation approach to reach the $5,000 jurisdictional threshold was entirely proper. While in certain circumstances such an argument may be persuasive, it fails here. The transactions that allegedly occurred here were separate and distinct and should not have been aggregated for the purpose of establishing an element of the crime where there was not a single plan or agreement.

**III.**

**THE APPEARANCE THAT THE GOVERNMENT FAILED TO
PRESENT COMPETENT FACTS TO THE GRAND JURY
REQUIRES DISCLOSURE OF GRAND JURY TRANSCRIPTS**

Notably, nowhere does the Government contest that what it actually presented to the grand jury was, or may have been, incorrect, particularly with respect to the evidence presented that human remains constitute property under § 2314. ECF No. 117 at 20-22.

And while it is logical that the Government would not want to disclose what information it presented to the grand jury, nevertheless, the Federal Rules of Criminal Procedure specifically permit release of grand jury materials when disclosure is centered on a motion for dismissal of an indictment based upon grand jury improprieties. There is no prerequisite that prosecutorial misconduct is required before disclosure of grand jury

7

transcripts.  See Fed. R. Crim. P. 6(e)(3)(E)(ii); see also United States v. Naegele, 474 F. Supp. 2d 9 (D.D.C. 2007) (defendant entitled to grand jury transcripts and evidentiary hearing where certain evidence was not presented to the grand jury).  Under the circumstances, Ms. Maclean has made a sufficient and particularized need for those transcripts.

**CONCLUSION**

For all of the foregoing reasons, Ms. Maclean requests that the Indictment be dismissed with prejudice.  Alternatively, the grand jury transcripts should be disclosed.


Dated:    April 30, 2025

                                      MIELE & RYMSZA, P.C.


                                      By:   s/Edward J. Rymsza
                                            Edward J. Rymsza, Esq.
                                            Pa. I.D. No. 82911
                                            Attorney for Defendant
                                            125 East Third Street
                                            Williamsport, PA  17701
                                            (570) 322-2113
                                            (570) 322-8813 (fax)
                                            Rymsza@comcast.net

**CERTIFICATE OF SERVICE**

    I, Edward J. Rymsza, Esq., hereby certify that on this 30th day of April 2025, I served the foregoing Reply Brief in Support of Motion to Dismiss Indictment upon Sean Camoni, Esq. by electronic mail.

Dated:    April 30, 2025

                      MIELE & RYMSZA, P.C.

                      By:   <u>s/ Edward J. Rymsza</u>
                              Edward J. Rymsza, Esq.
                              Pa. I.D. No. 82911
                              Attorney for Defendant
                              125 East Third Street
                              Williamsport, PA  17701
                              (570) 322-2113
                              (570) 322-8813 (facsimile)
                              Rymsza@comcast.net